IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MAYA MILLER, an individual,

        Plaintiff,

    v.

ST. CHARLES HEALTH SYSTEM, INC.,
an Oregon nonprofit corporation doing
business as St. Charles Prineville,

        Defendant.
_____

Case No. 2:18-cv-00762-JR

ORDER

RUSSO, Magistrate Judge:

        Defendant St. Charles Health System, Inc. seeks relief from the Court's summary judgment

ruling on the basis of a recent arbitration decision. All parties have consented to allow a Magistrate

Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28

U.S.C. § 636(c). For the reasons set forth below, defendant's request is denied.

**DISCUSSION**

Plaintiff Maya Miller began working as a nurse at defendant's predecessor hospital in September 1999. At all relevant times her employment was covered by a collective bargaining agreement ("CBA") between defendant and the Oregon Nurses Association ("ONA"). From 2006 through 2015, plaintiff received positive performance reviews and had only one incident of discipline.

Sometime in 2015, plaintiff transitioned to a position in defendant's emergency department. In April or May 2016, Michael Greene became the emergency department Nurse Manager. Plaintiff took FMLA leave to care for her ailing mother in Bulgaria around the time Greene started.

From April through July 2016, the hospital received three incident reports through its Safety Alert System ("SAS") regarding plaintiff. On July 27, 2016, Greene spoke with plaintiff about these incidents and provided her with verbal coaching.

From August through December 2016, the hospital received four additional SAS reports concerning plaintiff. On December 23, 2016, Greene addressed the new incidents with plaintiff.

On February 10, 2017, plaintiff received her annual review assessing her performance from January 1 through December 31, 2016. Plaintiff was rated as "solid" or "commendable/outstanding" in all areas, except in regard to her ability to act professionally and receive feedback graciously; acknowledge and learn from mistakes; and help others and ask for assistance. In these areas, plaintiff was rated as "marginal." During the remainder of February 2017, four incidents were the subject of SAS reports involving plaintiff.

On March 2, 2017, Greene met with plaintiff to discuss these incidents; a member of human resources and plaintiff's union representative also attended the meeting. Although termination was

not contemplated at that time, plaintiff received a performance plan and was placed on a two-week administrative suspension. After the meeting, plaintiff asked Greene for permission to take immediate leave to care for her mother in Bulgaria. Greene stated that plaintiff could not take family leave while on administrative leave.

The following day, Greene completed a seven-page investigative report analyzing the February 2017 SAS reports and concluded that plaintiff failed to follow standard work procedures. He then recommended termination.

Plaintiff (along with her union representative), Greene, and human resources met on March 15, 2017, and plaintiff was issued a final written warning. In order to return to work, plaintiff was to be monitored by an assigned nurse leader for two shifts and required to complete nine "competencies." During the meeting, plaintiff again requested leave to care for her mother. Greene informed plaintiff the date of her next shift and instructed that she needed to complete two "competencies" before taking leave.

On March 17 and 18, 2017, plaintiff successfully completed her "competencies." Plaintiff then asked Greene for permission to take leave to care for her mother; Greene directed plaintiff to contact human resources. Plaintiff thereafter attempted to contact human resources multiple times. On March 19, 2017, Greene wrote in a SAS report that plaintiff failed to follow a physician's order in removing a catheter.

On March 24, 2017, plaintiff contacted the hospital's third-party leave contractor, Unum. She also received a response from human resources that day. Plaintiff sought leave beginning: (1) March 25 for her own health condition; and (2) April 7 for her parents' health condition. On March 26, 2017, a SAS report alleged that plaintiff left the door to the medication management

system unlocked and unattended. The following day, Unum informed plaintiff that she was eligible for leave as of the date of her request, pending certification.

On April 3, 2017, plaintiff, her union representative, Greene, and human resources met to discuss the March SAS reports to get an understanding of plaintiff's side of the story. On April 5, 2017, defendant terminated plaintiff's employment.

The day after plaintiff was discharged, she saw a psychiatrist to obtain leave certification for her own health condition. Shortly thereafter, plaintiff flew to Bulgaria to care for her mother who had suffered a heart attack. In Bulgaria, plaintiff completed the leave certification documenting her mother's serious health condition.

On April 10, 2017, ONA lodged a grievance asserting that plaintiff's termination was not supported by "just cause" as required by the CBA.

On May 2, 2018, plaintiff filed a complaint in this Court, ultimately alleging four claims for interference and retaliation/discrimination under the Family Medical Leave Act ("FMLA") and Oregon Family Leave Act ("OFLA").

On July 12, 2019, defendant moved for summary judgment.

Arbitration hearings were completed over three days, concluding on October 22, 2019.

On December 16, 2019, the Court denied defendant's summary judgment motion in its entirety. See generally Miller v. St. Charles Health Sys., Inc., 2019 WL 6841970 (D. Or. Dec. 16, 2019). Concerning plaintiff's interference claims, the Court held that disputed issues of material fact existed as to whether plaintiff sufficiently supplied notice of her FMLA leave requests and whether those requests constituted a negative factor in the decision to terminate her. Id. at *6-9. Specifically in regard to the issues of notice and denial of leave, the Court rejected defendant's argument that "plaintiff's familiarity with the leave request process" was dispositive in light of

"the express statement from Greene to plaintiff that she was ineligible for leave while she was on administrative leave." Id. As to plaintiff's remaining retaliation claims, the Court held that a triable issue existed because it was unclear whether the hospital considered plaintiff's leave request as a factor in its adverse employment decision given that Greene first recommended termination the day after plaintiff's FMLA leave request. Id. at *9-10. In light of the denial of defendant's summary judgment motion, this case was set for a nine-day jury trial.

On June 15, 2021, the arbitrator issued a decision resolving ONA's grievance. See generally Benedict Decl. Ex. 4 (doc. 91). The arbitrator found that, for the purposes of the CBA, "just cause" existed for plaintiff's termination. Although that decision did not meaningfully address plaintiff's FMLA/OFLA allegations, it did consider ONA's argument that plaintiff's mother's "significant health problems in Bulgaria" should have been a mitigating factor:

> [T]he record shows that Grievant had used leave under the Family and Medical Leave Act in the past to take care of her mother when earlier health issues arose and caused her stress at work. The Hospital had been accommodating in granting such leave to the Grievant in the past. The Grievant knew how to apply for and take such leave. At the time of her discharge she was scheduling an additional FMLA leave to begin on April 6 to travel to Bulgaria and care for her mother. She did not request leave for the period before that date, however. In addition, the Grievant did not request leave to address any mental health issues of her own. The Grievant may not have believed that she needed such leave at the time. However, if a medical professional's judgment or concentration is so affected by stressful matters in their personal life that they cannot adequately attend to their professional responsibilities, they have a responsibility to remove themselves from their professional duties until they can return to them safely. The Grievant in this case did not take such action. In her testimony the Grievant presented herself as a caring nurse who took her responsibilities to her patients seriously. She worked many years when her performance was acceptable. While it is not clear from the record exactly what caused a change in her performance, the Hospital has adequately demonstrated that there was a decline; that the Grievant was provided an opportunity to correct the pattern of her performance problems; and that she did not do so.

Id. at 42-43.

On August 13, 2021, defendant filed the present request for relief, arguing that "[t]he Arbitrator's Final Decision that St. Charles had just cause to terminate Miller's employment is preclusive." Def.'s Opening Br. 8 (doc. 90). Alternatively, defendant contends that summary judgment should be entered in its favor as to all claims in light of this new evidence.

Plaintiff asserts that preclusion is unavailable because this District has repeatedly "considered and rejected arguments that are materially identical to Defendant's." Pl.'s Resp. Br. 5, 7-8 (doc. 92) (citing Markell v. Kaiser Found. Health Plan of Nw., 2009 WL 3334897 (D. Or. Oct. 15, 2009), aff'd, 405 Fed.Appx. 116 (9th Cir. 2010); Sheridan v. Providence Health & Servs.-Or., 2011 WL 13250762 (D. Or. Sept. 6), adopted by 2011 WL 6887160 (D. Or. Dec. 29, 2011); and Munger v. Cascade Steel Rolling Mills, Inc., 2019 WL 1938786 (D. Or. May 1, 2019), recons. granted in part, 2020 WL 423385 (D. Or. Jan. 27, 2020)). Plaintiff also argues that defendant's request for reconsideration is untimely and improper, and that the arbitrator's decision is "inadmissible on the grounds of hearsay, not being relevant to whether Defendant violated FMLA or OFLA, and because its probative value is substantially outweighed by several dangers." Id. at 10-15.

## I.    Preliminary Issue

Initially, the Court notes that defendant's arguments are centered on the purported now-established validity of its reasons for terminating plaintiff's employment. However, as addressed in this Court's summary judgment opinion, the presence or absence of legitimate, nondiscriminatory reasons for the adverse employment action is not determinative, especially as to plaintiff's interference claims. In particular, a plaintiff may bring an interference claim under a theory that either "her employer denied her FMLA leave" or "her FMLA leave was a factor in its

decision to terminate her," such that the existence of a terminable offense does not necessarily preclude relief. Miller, 2019 WL 6841970 at *6-9.

Concerning FMLA retaliation, the plaintiff must first establish a prima facie case. Id. at *9. Only then does the burden of production shift to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action, which may be rebutted by a showing of pretext. See id. (referencing the burden-shifting framework set forth in McDonald Douglas Corp. v. Green, 411 U.S. 792 (1973)); see also France v. Johnson, 795 F.3d 1170, 1175 (9th Cir. 2015) (to demonstrate pretext, the plaintiff can "directly [show] that unlawful discrimination more likely than not motivated the employer" or "indirectly [show] that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable").

In other words, even if admissible, arbitration findings concerning the presence of "just cause" are relevant only to elements or claims contingent upon proof of the plaintiff's adequate performance. See, e.g., Markell, 2009 WL 3334897 at *8-9; Munger, 2019 WL 1938786 at *2-6; see also Looney v. Washington Cnty., Or., 2011 WL 2712982, *6 (D. Or. July 11, 2011) (arbitrator's determination of "just cause" immaterial to the plaintiff's workers' compensation discrimination claim where "[t]he issue of discrimination appears nowhere in the arbitrator's findings").

## II.    Preclusive Effect of the Arbitration Decision

It is well-established that an adverse arbitration decision has no *per se* preclusive effect on the plaintiff's right to pursue statutory claims in federal court. Specifically, under Gardner-Denver and its progeny, "when a CBA lacks a 'clear and unmistakable' waiver of a federal judicial forum—as when the CBA only explicitly authorizes arbitration of contract-based claims—the arbitral decision does not preclude later litigation of federal claims." Sheridan, 2011 WL 13250762

at *10 (citing Markell, 2009 WL 3334897; Alexander v. Gardner-Denver Co., 415 U.S. 36, 59-60 (1974)). Since 1989, Oregon courts have applied the same rule to state statutory claims. See Andrews v. May Dep't Stores, 96 Or.App. 305, 312-13, 773 P.2d 1324 (1989) (arbitration award under a CBA "did not bar plaintiff's claims under ORS chapter 659 on principles of res judicata" such that the parties were "not collaterally estopped from relitigating facts that were decided in arbitration").

In a recent opinion involving a substantively similar arbitration decision, Judge Beckerman reaffirmed that "an adverse arbitration decision on an employee's contract-based claims arising from a collective bargaining agreement does not preclude an employee from relitigating his statutory claims in federal court," including FMLA and OFLA claims. Munger, 2019 WL 1938786 at *2-5. Judge Beckerman explicitly acknowledged Oregon's standard for issue preclusion in this context, as set forth in Shuler v. Distrib. Trucking Co., 164 Or.App. 615, 994 P.2d 167 (1999), but found that standard met only in regard to a state common law claim premised exclusively on a lack of "just cause," an issue that was "central" to the arbitrator's decision. Id. at *5-6.

In light of this precedent, defendant's attempt to distinguish this case from Markell, Sheridan, and Munger on the basis that the record here was fully developed prior to the arbitration proceedings is unpersuasive. See Def.'s Reply Br. 3 (doc. 94) ("[u]nlike in 'typical' arbitration proceedings, here the arbitrator's factfinding was informed by the parties' strong development of the evidence through discovery and witness testimony"). Indeed, defendant's argument ignores the weight of authority, as well as the express language of the CBA and limited scope of issues resolved via the arbitration proceedings.

Stated differently, the arbitration provision in this case does not clearly and unmistakably apply to plaintiff's FMLA/OFLA claims. The CBA's grievance procedures govern claims by any

nurse "dissatisfied" with "the interpretation and the application of the provisions of this Agreement." Becker Decl. Ex. 1, at 18-20 (doc. 93). Should a grievance proceed to arbitration, "the arbitrator shall not . . . be authorized to add to, detract from, or in any way alter the provisions of this Agreement." Id. at 20. The CBA's grievance procedures therefore neither mention FMLA/OFLA, nor do they refer to statutory causes of action generally. See Wawock v. CSI Elec. Contractors, Inc., 649 Fed.Appx. 556, 558 (9th Cir. 2016) ("clear and unmistakable" standard is met when the CBA incorporates the statute or includes a clause expressly referring to the claims at issue).

Moreover, the record reflects that the only issue submitted to and resolved by the arbitrator was whether defendant had just cause to terminate plaintiff. The arbitration decision itself did not analyze, or otherwise attempt to resolve, plaintiff's statutory claims. At most, it considered and rejected ONA's position that the circumstances underlying plaintiff's leave requests should have factored more heavily into the termination decision. See generally Benedict Decl. Ex. 4 (doc. 91); see also Sheridan, 2011 WL 13250762 at *11-12 (elements "of collateral estoppel are not met" as to a constructive discharge claim where "the arbitrator never applied the relevant tests under federal or Oregon law").

In sum, where, as here, a CBA authorizes arbitration of contract-based claims only, and the arbitral decision does not reach the merits of plaintiff's statutory claims, no preclusive effect attaches to that decision and plaintiff may pursue relief in federal court. See Sheridan, 2011 WL 13250762 at *11-12 (arbitrator's decision not preclusive where CBA's non-discrimination provision did not require the grievance process to be the sole remedy for violations of federal discrimination statutes); Mathews v. Denver Newspaper Agency LLP, 649 F.3d 1199, 1206-08 (10th Cir. 2011) (no preclusion of statutory claims where the CBA stated "[t]he arbitrator shall

have no power to add to, subtract from, change or modify any provision of this Agreement, but shall be authorized only to resolve the dispute submitted to him or her," and the dispute actually submitted to arbitration asserted no statutory claims, only breach of the CBA and "a vague complaint of retaliation"). Accordingly, the Court declines to dismiss plaintiff's statutory claims based on the preclusive effect of the arbitration decision.

## III.    Reconsideration of Summary Judgment Ruling

According to defendant, because the arbitrator "concluded [in June 2021] that St. Charles had just cause to terminate [plaintiff] no reasonable juror could find in her favor." Def.'s Opening Br. 10-14 (doc. 90). As a result, the Court should either "revisit" plaintiff's claims under Fed. R. Civ. P. 56 or "allow the arbitration decision into evidence and instruct the jury on its persuasive weight." Id. at 11-15; Def.'s Reply Br. 5-8 (doc. 94). Thus, defendant seeks reconsideration of the Court's prior ruling.

Defendant's request is fatally flawed in two respects. First, defendant goes beyond the limited issue to be resolved by this briefing, which was "the preclusive impact of the arbitration decision on the pending matter." Order (doc. 87).

Second, defendant does not specifically invoke either the grounds enumerated in Fed. R. Civ. P. 59(e) or Fed. R. Civ. P 60(b). See Backlund v. Barnhart, 778 F.2d 1386, 1388 (9th Cir. 1985) (denying a motion for reconsideration where the moving party "did not argue that their case falls within any of [the six] exceptions" outlined in Fed. R. Civ. P. 60(b). To the extent defendant relies on "newly discovered evidence,"[1] the arbitration decision does not warrant reconsideration

---

[1] Defendant retreats from its arguments concerning "newly discovered evidence" and instead asserts, for the first time in its reply, that the arbitration decision warrants relief under Fed. R. Civ. P. 60(b)(6). Defendant also posits that "the Court could now modify the scheduling order and re-open summary judgment briefing, to reevaluate the new evidence," under Fed. R. Civ. P. 16(4)(b). Def.'s Reply Br. 5 (doc. 94). Aside from the fact that a court need not consider arguments first

because: the arbitrator's post-summary judgment findings and conclusions did not exist until June 2021; and the motion was not brought within one year of the Court's summary judgment ruling. See Jones v. Aero/Chem Corp., 921 F.2d 875, 878 (9th Cir. 1990) (articulating the test for evaluating a Rule 59(e) or 60(b) motion based on new evidence).

Further, given that the final arbitration hearings took place in October 2019, the evidence upon which the arbitrator's decision was based necessarily had been in defendant's possession at the time of the Court's December 2019 summary judgment opinion. That opinion took into account evidence identical or similar to that used at arbitration, but the Court still concluded that plaintiff's statutory claims should proceed. See Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., 833 F.2d 208, 211-12 (9th Cir. 1987) ("newly discovered evidence must be of such magnitude that production of it earlier would have been likely to change the disposition of the case"); see also United States v. Westlands Water Dist., 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001) ("motions to reconsider are not vehicles permitting the unsuccessful party to rehash arguments previously presented . . . Nor is a motion to reconsider justified on the basis of new evidence which could have been discovered prior to the court's ruling").

Because defendant has not provided a basis for this Court to dismiss plaintiff's claims, this case remains slated for trial. Therefore, the Court declines to resolve plaintiff's evidentiary objections under Fed. R. Evid. 403 and 801, as any issues related to the admissibility of evidence

---

raised in a reply brief, defendant has not cited to any authority either granting preclusive effect or reconsideration based on an arbitration decision in this context. This is likely because, as discussed herein, the existence of "just cause" is not dispositive to plaintiff's statutory claims. In other words, the extraordinary circumstances required to effectuate relief under Fed. R. Civ. P. 60(b)(6) are simply not present here. See Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (reconsideration is "an extraordinary remedy, to be used sparingly and in the interests of finality and conservation of judicial resources"); see also Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 530 (9th Cir. 2000) ("a judge may set aside or reverse a prior ruling by a colleague in the same case" only if "cogent reasons or exceptional circumstances exist").

can be resolved as part of the pre-trial proceedings. The Court nonetheless notes that, although not preclusive, arbitral decisions "are generally admissible."[2] Knickmeyer v. Nev. ex rel Eighth Judicial Dist. Ct., 173 F.Supp.3d 1034, 1041 (D. Nev. 2016), aff'd, 716 Fed.Appx. 597 (9th Cir. 2017); see also Mitchell v. Postmaster Gen. of U.S. Postal Serv., 2020 WL 2312047, *3 (D. Or. Feb. 20), adopted by 2020 WL 2311549 (D. Or. May 8, 2020) ("[b]oth the Ninth Circuit and this district have found arbitrator's decisions are appropriate matters for judicial notice") (collecting cases).

That is, courts have found arbitration decisions "clearly relevant and highly probative" of a defendant's legitimate, nondiscriminatory reasons for the plaintiff's termination where discrimination or retaliation is alleged. Graef v. Chem. Leaman Corp., 106 F.3d 112, 117-19 (5th Cir. 1997); see also Morel v. Am. Bldg. Maint. Co., 124 Fed. Appx. 671, 672 (2d Cir 2005) ("[t]he fact that an adverse arbitral award on an employment discrimination claim does not preclude a Title VII action does not render the award irrelevant to plaintiff's pursuit of judicial relief . . . [it can be] highly probative of the absence of discriminatory intent"); Knickmeyer, 173 F.Supp.3d at 1041-46 (finding arbitration awards admissible under Fed. R. Evid. 403 and 801, and concluding that the defendant had a legitimate, nondiscriminatory reason for the plaintiff's termination). As such, barring argument or evidence indicating its lack of trustworthiness, a jury would likely find the arbitration decision in this case to be significant and compelling evidence.

**CONCLUSION**

---

[2] The particular "weight afforded by the court to an arbitrator's decision is determined in the court's discretion with regard to the facts and circumstances of each case." Garner-Denver, 415 U.S. at 60 n.21. "Relevant factors include the existence of provisions in the collective-bargaining agreement that conform substantially with Title VII, the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue of discrimination, and the special competence of particular arbitrators." Id.

Defendant's requests (doc. 90) are denied. The parties' pretrial order is due within 30 days of the date of this Order. The parties are instructed to contact the Court if interested in mediation or a judicial settlement conference.

DATED this 17th day of December, 2021.


_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge